UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ROBERT SPOONER,<br><br>                    Plaintiff,<br><br>          v.<br><br>MULTI HULL FOILING AC45 VESSEL 4<br>ORACLE TEAM USA, et al.,<br><br>                    Defendants. | Case No.  15-cv-00692-JCS<br><br>**ORDER DENYING REQUEST TO<br>ISSUE VESSEL ARREST WARRANT**<br><br>Re: Dkt. No. 1 |

## I.      INTRODUCTION

Plaintiff Joseph Spooner brings this admiralty action for wrongful termination of a "maritime services contract," both in personam against Defendant Oracle Racing, Inc. ("Oracle Racing") and in rem against *4 Oracle Team USA*, a hydrofoiling AC45-class racing catamaran (the "Vessel"). The Court requested supplemental briefing from both parties as to whether a warrant should issue for arrest of the Vessel. Having reviewed the parties' arguments, the Court concludes that no basis for a maritime lien is apparent from Spooner's Complaint, and therefore declines to issue a warrant to arrest the Vessel.

## II.      BACKGROUND

### A.      Factual Allegations

As relevant background to this action, the Court takes notice of the undisputed facts that (1) the America's Cup is a long-established international sailing competition; and (2) Oracle Racing, in conjunction with the Golden Gate Yacht Club, is the defending America's Cup champion after winning the 34th America's Cup on San Francisco Bay in 2013.

Spooner's Complaint alleges as follows. In December of 2013, Spooner entered into a maritime services contract with Oracle Racing to serve "as a member of the sailing team of

ORACLE TEAM USA." Compl. (dkt. 1) ¶ 10. Spooner alleges that as a result of this contract, he "was employed by defendants as a member of the crew aboard [the Vessel], in the service of the vessel, and in the course and scope of his duties as a seaman in furtherance of the mission and commerce of the vessel [Spooner] crewed, maintained, and repaired said vessel." *Id.* ¶ 9. The contract "commenced on February 1, 2014, for the fixed term of over three (3) and a half years," to expire seven days following the last race of the 35th America's Cup Finals. *Id.* ¶ 10. From July 1, 2014 through the expiration of the contract, Spooner was to be paid $25,000 per calendar month. *Id.* ¶ 11. The contract also provided that Spooner would receive a bonus of not less than six months' pay if Oracle Team USA successfully defended its title at the 35th America's Cup, and that he would be reimbursed for "any other business expenses . . . properly and necessarily incur[red]." *Id.* ¶¶ 12−13.

Spooner alleges that by letter dated January 16, 2015, "Oracle Racing, Inc. wrongfully and without cause, breached its contractual obligations to [Spooner] by discharging [him] from performing his contractual services." *Id.* ¶ 14. Oracle Racing paid Spooner through January 31, 2015, but has not paid him for any period since that date, despite Spooner's demand that Oracle Racing pay him the full amount due under the remaining term of the contract. *Id.* ¶¶ 15−17. In satisfaction of wages purportedly owed, Spooner asks the Court to declare that Spooner holds a maritime lien against the Vessel, and to arrest the Vessel for potential condemnation and sale. *Id.* at 5 (Itemized Demand for Judgment ¶¶ 1−2).

**B.   Procedural History**

Spooner filed his Verified Complaint on February 13, 2015 and sought expedited review of his request for a warrant to arrest the Vessel. *See generally id.*; Notice of Request for Review ("Request," dkt. 1-4). The Request argues that an arrest warrant should issue because Spooner is entitled to a maritime lien both for seaman's wages and for necessary repairs and maintenance. Request at 4−5. Spooner also filed a short "Amended Notice of Request" the same day, consisting of legal arguments as to "whether a yacht is a vessel for the purpose of a maritime lien." *See* Am. Notice of Request ("Am. Request," dkt. 4). The Court was unable to determine from these documents whether a warrant should issue, and on February 17, 2015 issued an Order directing

Spooner to file a supplemental brief and permitting Oracle Racing to file a simultaneous brief in opposition. *See* Order (dkt. 6). Specifically, the Court asked Spooner to address, among any other relevant issues, the following:

> (1) whether it is proper for the Court to review whether a complaint sufficiently states a claim before issuing an arrest warrant for a vessel; (2) if so, whether Spooner's Complaint sufficiently alleges that Defendant Oracle Racing, Inc. ("Oracle Racing") lacked authority to terminate Spooner's contract; and (3) whether wrongful termination of an employment contract—as opposed to nonpayment of wages for work already completed—gives rise to a maritime lien in these circumstances.

*Id.* at 1.

Spooner's Supplemental Brief changes tack from his original Request. Instead of arguing that Oracle Racing failed to pay seaman's wages or reimburse necessities, Spooner now argues that any breach of a maritime contract is sufficient to create a maritime lien, and that his contract with Oracle Racing meets the criteria of a maritime contract. Pl.'s Supp'l Br. (dkt. 9) at 3−4, 9 (citing *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 24 (2004); *Kossick v. United Fruit Co.*, 365 U.S. 731, 735−36 (1961); *The Resolute*, 168 U.S. 437, 439−40 (1897); *Wilkens v. CIT Corp.*, 153 F.3d 1273, 1276 (11th Cir. 1998)). Spooner acknowledges that the Court "must review the complaint and supporting papers" to determine whether "the conditions for an in rem action appear to exist," but argues that such review "is not meant to be 'rigorous.'" *Id.* at 7 (citing Admiralty Rule[1] C(3)(a)(i); *Weeks Marine Inc. v. Cargo of Scrap Metal Ladened Aboard Sunken Barge Cape Race*, 571 F. Supp. 2d 334 (D. Conn. 2008)). Thus, according to Spooner, his allegation that Oracle Racing breached a "maritime services contract" is sufficient to issue an arrest warrant for the Vessel—and any arguments against the propriety of arrest are better suited for a post-arrest hearing. *See id.* at 6.

Oracle Racing's brief opposing arrest of the Vessel relies in large part on factual contentions outside the scope of the Complaint, including a declaration by Oracle Racing's general manager Grant Simmer and a copy of contract that grants either party the right to terminate it "for

---

[1] The rules governing admiralty proceedings in federal court are set forth in the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. For convenience, this Order refers to those rules as "Admiralty Rules."

United States District Court
Northern District of California

United States District Court
Northern District of California

1  any reason whatsoever at any time by giving no less than two (2) weeks' prior written notice of

2  termination."  Simmer Decl. (dkt. 10-1) Ex. A ¶ 12; *see generally* Oracle Br. (dkt. 10).  Oracle

3  Racing argues that under Admiralty Rule C, it is proper for the Court to examine whether the

4  conditions for an in rem action exist before issuing a warrant.  Oracle Br. at 3.  According to

5  Oracle Racing, (1) there is no maritime lien for breach of a maritime contract because Oracle

6  Racing was within its rights in terminating the contract, *id.* at 4; (2) there is no maritime lien for

7  unpaid wages because Spooner has not alleged that he was not paid for any services rendered and

8  because relevant provisions of the Seaman's Wages Act exclude yachts, *id.* at 4−5; and (3) there is

9  no maritime lien for necessaries because Spooner has not alleged that he was not reimbursed for

10  repair work that he actually performed and because the Vessel was not launched until after

11  Spooner's contract was terminated, *id.* at 5−6.  The Court disregards Oracle Racing's contentions

12  that rely on purported facts outside of the Complaint, except to the extent, as discussed below, that

13  the contract itself is properly subject to judicial notice.

14       Spooner filed a second supplemental brief asserting that there is no party with standing to

15  speak for the Vessel because Oracle Racing's brief "was not filed on behalf of the owner of the

16  [Vessel]," and no "Claim of Owner" has been filed.[2]  Pl.'s 2d Supp'l Br. (dkt. 12) at 1.  Spooner

17  also filed a declaration disputing Oracle Racing's contention that the Vessel had not been launched

18  during his tenure with Oracle Racing.  *See generally* Spooner Decl. (dkt. 14).  Spooner's

19  Declaration attaches photographs and internet links to videos that purport to show Spooner sailing

20  and repairing the Vessel.  Spooner Decl. Exs. A−G.  Spooner later filed an amended declaration

21  attaching additional evidence that the Vessel was launched, and Spooner crewed on it, before the

22  contract was terminated.  *See generally* Spooner Am. Decl. (dkt. 15).

23  **III.  ANALYSIS**

24      **A.  Legal Standard**

25       "In any action in rem the complaint must: (a) be verified; (b) describe with reasonable

26

27     [2] This issue is immaterial for present purposes.  Whether or not Oracle Racing's counsel is
entitled to speak for the Vessel, Oracle Racing is itself a party to the case and the Court

28  specifically permitted Oracle Racing to file a brief addressing the propriety of an arrest warrant.
*See* dkt. 6.

particularity the property that is the subject of the action; and (c) state that the property is within

the district or will be within the district while the action is pending."  Admiralty Rule C(2).  The

Admiralty Rules further provide that when such a complaint is filed:

> The court must review the complaint and any supporting papers.  If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action.

Admiralty Rule C(3)(a)(i).

The Ninth Circuit has described the standard for bringing a maritime action in rem as

follows:

> A maritime action *in rem* has traditionally been available only in connection with a maritime lien. Claims not creating a maritime lien must be pursued *in personam. The Resolute,* 168 U.S. 437, 440–42, 18 S. Ct. 112, 113–14, 42 L. Ed. 533 (1897). Maritime liens must be construed "*stricti juris,* and cannot be extended by construction, analogy, or inference." *Osaka Shosen Kaisha v. Pacific Export Lumber Co.,* 260 U.S. 490, 499, 43 S. Ct. 172, 174, 67 L. Ed. 364 (1923). Consequently, "[t]he only liens recognized today are those created by statute and those historically recognized in maritime law." *In re Admiralty Lines, Ltd.,* 280 F. Supp. 601, 604−05 (E.D. La.1968), *aff'd mem.,* 410 F.2d 398 (5th Cir. 1969).

*Melwire Trading Co. v. M/V Cape Antibes*, 811 F.2d 1271, 1273 (9th Cir.) *amended*, 830 F.2d

1083 (9th Cir. 1987).  In determining whether "the conditions for an in rem action appear to exist"

in this case, *see* Admiralty Rule C(3)(a)(i), the Court therefore considers whether Spooner appears

to have a maritime lien "created by statute or historically recognized in maritime law" against the

Vessel.  *See Melwire Trading Co.*, 811 F.2d at 1273 (quoting *Admiralty Lines*, 280 F. Supp. at

604−05).

**B.**     **Spooner's Complaint Fails to Establish a Lien for Wages or Necessaries**

Although Spooner's Complaint invokes a maritime lien for seaman's wages and

necessaries (specifically, repairs and maintenance), *see* Compl. ¶¶ 16−18, his allegations do not

support the existence of a lien on either of those bases.  The Complaint explicitly alleges that he

was paid his contractual rate through January 31, 2015—fifteen days after Oracle Racing

"discharg[ed] [him] from performing his contractual services."  *Id.* ¶ 13.  The Complaint does not

allege that Spooner provided any services whatsoever, whether as a sailor or a repairman, for

United States District Court
Northern District of California

United States District Court
Northern District of California

which he was not compensated.  As Judge Sweigert stated in a 1967 decision of this Court:

> From the earliest period of maritime commerce the test in admiralty courts for determining whether there is a seaman's wage lien has been: Has a maritime service been performed? If such service has *been performed*, then whatever constitutes *the compensation for the service*, if reducible to money, may be enforced by a maritime lien against the vessel upon which those services were performed.

*Long Island Tankers Corp. v. S. S. Kaimana*, 265 F. Supp. 723, 726 (N.D. Cal. 1967) (emphasis added) *aff'd without opinion sub nom. Cross v. S. S. Kaimana*, 401 F.2d 182 (9th Cir. 1968) (per curiam).  It follows that where all services performed have been fully compensated, no seaman's wage lien arises.  The Court concludes that the same principle applies to necessaries such as repairs and maintenance.

Because wages and necessaries were the only grounds for a maritime lien discussed in Spooner's Complaint and contemporaneous supporting papers, the Court was unable to find that "the conditions for an in rem action appear[ed] to exist," and declined to direct the clerk to issue a warrant.  *See* Admiralty Rule C(3)(a)(i).  The Court instead requested further briefing.  Spooner's supplemental briefs do not appear to pursue the argument that a maritime lien arises in this case from unpaid wages or uncompensated necessaries.  The Court therefore turns to whether the purportedly wrongful termination of Spooner's "maritime services contract" gives rise to a maritime lien.

**C.     Under Ninth Circuit Authority, Wrongful Termination of a Seaman's Contract Can Give Rise to a Maritime Lien**

Spooner relies on the Supreme Court's 1897 statement in *The Resolute* that "the only requirements necessary to give jurisdiction" for "a suit in rem for the breach of a maritime contract [are] [f]irst, that the contract sued upon is a maritime contract; and, second, that the property proceeded against is within the lawful custody of the court."  168 U.S. at 439; *see* Pl.'s Supp'l Br. at 3.  To the extent that *The Resolute* can be read as holding that *any* breach of *any* maritime contract gives rise to a maritime lien, the statement is dicta—the case before the Supreme Court dealt with unpaid wages for services rendered as crew on a tugboat—and inconsistent with other case law.  Courts have long held, for example, that a "claim for breach of an executory contract cannot . . . give rise to a maritime lien enforceable in rem against a vessel."  *European-Am.*

*Banking Corp. v. M/S Rosaria*, 486 F. Supp. 245, 255 (S.D. Miss. 1978); *see also, e.g.*, *Osaka Shosen Kaisha v. Pac. Export Lumber Co.*, 260 U.S. 490, 500 (1923); *The Yankee Blade*, 60 U.S. (19 How.) 82, 90 (1857); 8-VII Benedict on Admiralty § 7.01(C)(1)(c). The issue in this case is therefore whether a seaman[3] can claim a maritime lien for damages owed for wrongful discharge in breach of contract, even though he has been paid for services rendered prior to termination.

Case law on that issue is inconsistent and surprisingly sparse. Although some cases have held that wrongful termination claims do not give rise to maritime liens, the Court understands controlling Ninth Circuit authority to hold that they can.

At least one district court has held that a wrongfully terminated seaman "cannot proceed in rem even if improper discharge be assumed but must resort to whatever remedy he may have, if any, in personam." *The Golden Kauri*, 28 F. Supp. 288, 290 (E.D. La. 1939). That court stated that "it is settled that where services have not, in fact, been rendered, there can be no lien as for wages, except [as provided by statute]," based on the "the settled rule that unexecuted[4] maritime contracts carry no lien." *Id.* at 289−90. That holding is consistent with the general rule that a maritime lien "aris[es] out of services rendered to or injuries caused by" a vessel. *See* 1 Admiralty & Mar. Law § 9-1. In the case of wrongful termination or discharge, no uncompensated services have yet been rendered, and the harm is caused by the discharging party as opposed to the vessel. The Fifth Circuit has cited *The Golden Kauri* with approval for the proposition that a "seaman does not have a claim against the vessel for the wages he would have earned had he not been improperly discharged" unless such a remedy is provided by statute,[5] and thus "can proceed only

---

[3] At least one court has held that a crew member in a yacht race is a seaman for the purpose of admiralty law, albeit in the context of a claim for injury rather than breach of contract or unpaid wages. *In re Read*, 224 F. Supp. 241, 246 (S.D. Fla. 1963). The reasoning of that court—that a race crew "c[omes] aboard for the very purpose of aiding in the navigation of a vessel," *id.*—is persuasive, particularly in this case where, unlike in *Read*, there was a contract and consideration paid for Spooner to serve as crew.

[4] It is clear in the context of the case that the court used the term "unexecuted" in the sense of something not "done, given, or performed," rather than not signed by the parties. *See* Black's Law Dictionary 1650 (9th ed. 2009) (second listed definition of "executed"). The opinion previously stated that the plaintiff had signed a written agreement that he believed mandated his continued employment. *The Golden Kauri*, 28 F. Supp. at 289.

[5] The current statute that provides for such a remedy in some circumstances is 46 U.S.C. § 10313(c). Spooner has not invoked this statute, and it is not applicable here because the chapter

against the owner or master of the vessel for the wages he would have earned and may not use the summary in rem procedures Congress has provided seamen for the collection of their earned wages." *Bunn v. Global Marine, Inc.*, 428 F.2d 40, 48 n.10 (5th Cir. 1970).

A respected treatise on admiralty law takes the opposite view, stating that a "principle exception to the [executory contract] rule is that a crewmember can assert a lien for unearned wages." 8-VII Benedict on Admiralty § 7.01(C)(1)(c) (citing *Todd Shipyards Corp. v. City of Athens*, 83 F. Supp. 67, 90 (D. Md. 1949)). The only case cited, however, does not appear to support that rule. The page of *Todd Shipyards* cited by Benedict discusses a lien for a provision master's wages that had "accumulated" during various voyages, as well as for the cost of supplies he had purchased. *Todd Shipyards*, 83 F. Supp. at 90. The Court finds no indication that the provision master's lien was based on unearned wages. *See id.*

Other courts have in fact recognized maritime liens arising from wrongful discharge claims. Most significantly, the Ninth Circuit appears to have taken that approach in *Putnam v. Lower*, 236 F.2d 561 (9th Cir. 1956). In that case, the "holders of a valid recorded preferred ship mortgage on the oil screw vessel Silver Spray" appealed "a decree of the district court . . . foreclosing said mortgage and subordinating it to the wage liens of appellees," the ship's crew. *Id.* at 563. The Ninth Circuit identified "an inconsistency . . . in the theory of recovery" applied by the district court: the district court had found the seamen's liens superior to the mortgage based on their favored status as wage liens, but the ship was arrested before the voyage commenced, and "no maritime lien can be allowed to seamen for wages accruing subsequent to the time the ship is taken into custodia legis." *Id.* at 570. The Ninth Circuit resolved the inconsistency by construing the crew's claims as for wrongful discharge damages rather than wages:

> [I]t is clear that any compensation recoverable to appellees, as wages, must have accrued at or prior to the time that appellee Lower libeled the 'Silver Spray.' While not unquestioned,[6] courts have, in similar situations, allowed recovery *not for wages, but as damages for breach of the seaman's employment contract by wrongful*

---

containing it applies only to vessels on international or intercoastal voyages. *See id.* § 10301(a). There is no allegation that the Vessel in this case undertook or is even capable of undertaking such a voyage. *See generally* Compl.

[6] "Old Point Fish Co. v. Haywood, 4 Cir., 1940, 109 F.2d 703, 706."

> *discharge*. This, on the theory that such claim becomes matured at the time of the wrongful discharge,[7] or, in our case, by the abandonment of the contract by [the ship's owner].
>
> Applying this reasoning to the instant case, since [the owner] had wrongfully abandoned his contracts for the tuna venture before the date of the libel, appellees' claims for damages had accrued before the vessel entered custodia legis, and did not depend upon facts occurring subsequent to that time. We conclude that the appellees, claims existed at or before the time the ship was libeled, and were in no way cut off by said libel.

*Id.* at 570−71 (emphasis added; footnotes in original but renumbered for consistency with this Order). Although the Ninth Circuit found the district court's award of expectation damages overly speculative, it held that the crew members were entitled to reliance damages, including "a fair allowance for their time and services in sailing the Silver Spray to Alaska and back" in preparation for the aborted primary voyage (a tuna fishing expedition). *Id.* at 573. Because such damages were "in the nature of seaman's wages," they took priority over the mortgage. *Id.*

*Putnam* could be clearer as to whether the damages ultimately approved took the form of maritime liens, but the Court understands the opinion to hold that they did. That case is therefore controlling authority in this district that wrongful termination of a seaman's employment contract can support a maritime lien.

### D. Spooner's Complaint Fails to Establish That He Is Entitled to a Maritime Lien for Wrongful Discharge

Having determined that wrongful discharge can create a maritime lien, the Court now turns to whether Spooner's Complaint adequately states such a claim. Because the contract grants Oracle Racing the right to terminate it "for any reason whatsoever at any time," the Court holds that Spooner has failed to state a claim for wrongful termination, and thus has no maritime lien on the Vessel.

#### 1. The Contract is Subject to Judicial Notice

A threshold issue is whether the Court may take judicial notice of the contract, which was submitted by Oracle Racing in response to the Court's request for briefing. The Court is aware of no authority discussing when judicial notice is appropriate in determining whether a vessel arrest

---

[7] "The Wanderer, C.C.La.1880, 20 F. 655; The Lakeport, D.C.W.D.N.Y.1926, 15 F.2d 575."

1   warrant should issue.

2        The federal Admiralty Rules state that absent exigent circumstances, a "court *must* review

3   the complaint and any supporting papers" before directing the clerk to issue an arrest warrant.

4   Admiralty Rule C(3)(a)(i).  It is well established in civil non-admiralty cases that even when a

5   court's review is otherwise limited the allegations of a complaint, the doctrine of incorporation by

6   reference permits the court "to take into account documents whose contents are alleged in a

7   complaint and whose authenticity no party questions, but which are not physically attached to the

8   plaintiff's pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation

9   marks, brackets, and citations omitted).  At the time when the court decides whether a warrant

10  should issue, the record for a typical in rem admiralty case likely will not contain documents

11  beyond what the plaintiff himself or herself has submitted.  But in the rare case where additional

12  documents are filed—and perhaps rarer still, where a court can be satisfied that authenticity is not

13  contested—this Court finds no reason why the incorporation by reference doctrine should not

14  apply.  Where such documents make clear that no maritime lien exists, turning a blind eye to them

15  would require a court to set in motion potentially significant efforts by the United States Marshall,

16  the parties, and the court system to effect a baseless arrest, a post-arrest hearing, and the inevitable

17  release of the vessel once the arrest is vacated.

18        Incorporation by reference is appropriate in this case.  The contents of Spooner's contract

19  are alleged in, and indeed integral to, his Complaint.  Spooner alleges that he "entered into a

20  maritime services contract entitled 'Heads of Terms for AC35—Sailing Team—Joseph Spooner.'"

21  Compl. ¶ 10.  The Complaint recounts the commencement date of the contract, its term, and its

22  provisions regarding Spooner's compensation.  *Id.* ¶¶ 10−12.  The Complaint also quotes

23  provisions of the contract setting forth Spooner's duties as a member of Oracle Racing's sailing

24  team and the terms by which he would be reimbursed for expenses.  *Id.* ¶¶ 10, 13.

25        The Court is further satisfied that Spooner does not contest the authenticity of the contract

26  submitted by Oracle Racing.  After Oracle Racing filed its brief (which set forth its arguments

27  regarding the contract's terminability) and Grant Simmer's declaration (which included the

28  contract as an attachment), Spooner filed a declaration disputing a number of Simmer's assertions

United States District Court
Northern District of California

but conspicuously silent as to the authenticity of the contract.  *See generally* Spooner Decl.
Spooner's amended declaration, filed several days after Oracle Racing submitted the contract,
adds further evidence addressing when the boat was launched, but again does not dispute the
contract's authenticity.  *See generally* Spooner Am. Decl.  Although Spooner was not required to
file any response to Oracle Racing's brief, it is not plausible that, having felt it necessary to
dispute factual contentions regarding when the Vessel was launched, Spooner would withhold a
contention that Oracle Racing had submitted a false copy of the contract.  Thus, because the
Complaint alleges the contents of the contract and no party disputes its authenticity, the Court
takes judicial notice of its terms as if it were incorporated into the Complaint.[8]

### 2.  Viewed in Conjunction with the Contract, the Complaint Fails to State a Claim for Wrongful Termination

Taking into consideration the terms of the contract itself, the Court now considers whether
Spooner's Complaint states a claim for its breach—if there is no breach, then there is no maritime
lien, the "conditions for an in rem action" would not "appear to exist," and it would thus be
improper for the Court to direct that a warrant should issue.  *See* Admiralty Rule C(3)(a)(i).

The contract is between Oracle Racing, referenced therein as "OTUSA" (an abbreviation
of Oracle Team USA), and Allegro Yachting Ltd. (the "Company"), "to procure the services of
Joseph Spooner (the 'Consultant') as a member of the Sailing Team of OTUSA for the 35th
America's Cup."[9]  Simmer Decl. Ex. A at 1.  Spooner signed the contract on behalf of the
Company, *id.* at 6, and the Court assumes for the sake of argument that he has standing to bring
this action in his personal capacity.

The contract plainly grants both parties discretion to terminate the contract on two weeks'
notice:

---

[8] In the alternative, the Court construes the contract as among the "supporting papers" to the
Complaint and thus subject to review before issuing a warrant.  *See* Admiralty Rule C(3)(a)(i).
[9] Although the contract anticipated its eventual "substitution with a long-form employment
agreement," that later agreement was to "be based on the material terms agreed and included in
[the] Heads of Terms," Simmer Decl. Ex. A ¶ 20, and the parties appear to agree that the contract
had not been replaced before its recent termination.  *See* Compl. ¶ 10 (describing the operative
contract as the "Heads of Terms for AC35—Sailing Team—Joseph Spooner" entered on or about
December 9, 2013).

> **Notice Period:** Either OTUSA or the Company may terminate this
> Heads of Terms *for any reason whatsoever at any time* by giving no
> less than two (2) weeks' prior written notice of termination.

Simmer Decl. Ex. A ¶ 12 (emphasis added).  Although Spooner's Complaint correctly describes the contract as expiring seven days following the 35th America's Cup Finals, the Complaint neglects to include the first clause of the contract's expiry date paragraph: "Unless terminated earlier in accordance with this Heads of Terms."  *Id.* ¶ 3.  Thus, while the contract provides for monthly compensation "through the expiry date stated above," *id.* ¶ 7(b), the definition of that date specifically contemplates the possibility of early termination, *id.* ¶ 3.

Spooner alleges that "on January 16, 2015" Oracle Racing "breached its contractual obligations to plaintiff by discharging plaintiff . . . by sending plaintiff a letter of discharge dated January 16, 2015," and failed to pay him after January 31, 2015. Compl. ¶¶ 14−15.  The contract makes clear that either party had the right to terminate the contract in this manner, i.e., on two weeks' written notice.  Simmer Decl. Ex. A ¶ 12.  Oracle Racing's termination of the contract was therefore not a breach.  With no breach, there is no basis for a maritime lien, and the "conditions for an in rem action" do not "appear to exist."  *See* Admiralty Rule C(3)(a)(i).  The Court accordingly DECLINES to direct the clerk to issue a warrant to arrest the Vessel.

## IV.   CONCLUSION

Although wrongful discharge in breach of a maritime contract can give rise to a maritime lien in the Ninth Circuit, the record before the Court does not indicate that any such breach occurred.  The Court finds no basis for an in rem action apparent, and DECLINES to direct the clerk to issue a warrant for the arrest of the vessel *4 Oracle Team USA*.  If Spooner is aware of additional facts to show that a warrant should issue, he may file an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15(a); *see also* Admiralty Rule A(2) (providing that the Federal Rules of Civil Procedure apply to admiralty proceedings except

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

12

where inconsistent with the Admiralty Rules).

This Order has no effect on Spooner's in personam claim against Oracle Racing, which is not properly before the Court at this time.

**IT IS SO ORDERED.**

Dated: February 23, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge